Thank you, Your Honor. Good morning. May it please the Court, my name is Carlos Cruz and I represent the petitioner, Mr. Velasquez-Rios. May I reserve three minutes for rebuttal? Yes, certainly. Now, I'll just comment that because of the stresses of remote argument, I'm sort of a softy. If you need an extra minute or two, you'll get it at the end. But you should really try to watch your time and stop before you use it all up. Yes, Your Honor. Thank you. Your Honors, the Board of Immigration Appeals erroneously declined to apply California Penal Code Section 18.5 in determining whether or not the petitioner could be convicted, excuse me, could be sentenced to a year or more for a crime involving moral turpitude under INA Section 237A.2 based on the following three reasons. First, the Board's reliance on Magnillo v. U.S. in this Court's decision in U.S. v. Diaz does not support the rejection of Penal Code Section 18.5. Second, the retroactive application of Penal Code Section 18.5 should be treated under the same legal framework applied to 17B reduction cases. And lastly, the definition of a conviction is a separate conviction definition that does not provide support for the reference to a sentence found in the INA and certainly not at Section 237A.2. California Penal Code Section 18.5 retroactively reduced the maximum possible sentence for misdemeanor in the state of California. The maximum possible sentence today is 364 days, not 365 days retroactively. INA Section 237A.2 provides that in order for a person to be deportable under that section, that person must be convicted of a crime involving moral turpitude for which a sentence of one year or longer may be imposed. The Board rejected the application of 18.5 and disregarded that section entirely, finding that the Board would use the sentence at the time of the original conviction and not based on the retroactive application of 18.5 reducing the maximum sentence to 364 days. But the Board's reliance on Magnillo and U.S. v. Diaz is misplaced. Can I just ask you a question about that? So in your briefing, you just English, McNeil, Diaz. You have another case, Prado, which is federal immigration law, because they weren't exactly on point, which I agree. But in each case, and the BIA relied on them for this principle, the court looked back to the date of conviction and said, what was the sentence, what was the situation on that date? And it said, for purposes of federal immigration law, we will do the same thing. What's wrong with taking that approach? That seems like a permissible interpretation. Help me understand why it's not. Your Honor, the interpretation would be prudent if the language of the statute and the history of the statute provided for that same result. The reason why Supreme Court in Magnillo and Diaz reached the decision it did and allowed the consideration of the sentence at the time of the conviction is because the language of the statute was very specific. In Magnillo, the court specifically referenced prior convictions for either a violent felony or a serious drug offense. And it did not matter that North Carolina later reduced the sentence from 10 years to 38 months and 30 months, respectively. The court also noted the legislative history behind these sentencing guidelines, Your Honor. There is a historical perspective to these sentencing guidelines that is utterly absent in the Immigration and Nationality Act with regards to Section 237A2. The Diaz case, in essence, would be inconsistent with this court's decisions in cases involving 17B motions where this court has accepted that the reduction of a felony to a misdemeanor will be considered for immigration purposes regardless of the reason employed in those motions. So when I looked at, I think you cited Garcia-Lopez and Lafarga, are those the cases you're referencing? Yes, sir. In those cases, they were not designated offenses at the time. In fact, the defendant wasn't even sentenced. And it wasn't designated as to whether it was a misdemeanor or a felony until later in Garcia-Lopez after he turned himself in for a probation violation. So it's different than in a situation where someone is convicted and sentenced historically. So I didn't see how those cases helped you that much. Yes, sir. Lafarga and Garcia-Lopez do support the petitioner's argument in this case because those cases are based on the finality of the sentence, not on the finality of the conviction. I'll point you to the dissenting opinion, Your Honor, in the Lafarga case. In that dissenting opinion, the court cites to the historical record that the petitioner in that case had been convicted of a felony originally and that this court should look to the conviction initially and the sentence that could have been imposed initially for that felony offense. This court rejected that line of reasoning in Lafarga and then again in Garcia-Lopez and found that there is a significant difference between the definition of a conviction, which requires that finality and that consideration of the original offense, and the absence and lack of historical perspective for the definition of sentence. But at the time of conviction, the court did not designate it as a felony or a misdemeanor. It was undesignated, which is different than in this case where there was no delay in the determination of what he was convicted for. So I'm not sure how that supports your position. Your Honor, under the California Penal Code statute, the individual is convicted of a felony until either the defendant moves to reduce the felony to a misdemeanor or some subsequent action on the part of the court reclassifies the felony to a misdemeanor. That may be, but it's not what we said in Garcia-Lopez. In Garcia-Lopez, we said it was undesignated. And I understand that, Your Honor. And the reason why I believe that the court should look at the sentence is because that is the only way to explain the different conclusion being reached in Lafarga, in the Garcia-Lopez, and in the Diaz case. Diaz is based on the finality of the conviction. Lafarga and Garcia-Lopez are based on the absence of a finality when it comes to sentence. And the reason for these two differences, in essence, is that Congress has explicitly provided a definition for conviction after more than 50 years of the board's attempt attempting to reach that definition, which it finally reached in matter of OSCOP. In matter of OSCOP. Excuse me, Your Honor. Yes, if I understand correctly, in Diaz, he was convicted of an offense that was punishable for more than one year. And then the change in law, Prop 47, allowed the defendant to recall the conviction and be resentenced as a misdemeanor. But we said that despite the retroactivity and the fact that he was now sentenced to a misdemeanor, it didn't matter because it didn't alter the historical fact of the state conviction, which is what the BIA was doing in this case. They said the historical fact of the conviction is what, and the sentence is what matters, what was punishable then. Yes, Your Honor, and I understand the historical significance of a conviction in Diaz. My point to the court is that to reach that conclusion in Diaz, the court relied on the specific language of the statute, both in Prop 47 and at 21-8 U.S.C. Section 841. And in the clear congressional intent behind that particular section in discouraging repeat offenders. And so, Your Honor, this is an issue of whether the court is going to analyze 18.5 based on the finality of the conviction or whether the court is going to analyze 18.5 under the finality of the sentence. Counsel Judge Gould, if I could interject a quick question. I have sort of a theory issue on which I'd like your perspective and your client's perspective. So we have a federal system where we've got various federal laws, including the immigration laws, and we have lots of different state laws under the state's police power. So in a federal system, why or does it make sense to permit a state by its action retroactively to change the consequences that are spelled out in a federal law? Your Honor, and I would there refer you to the Boar's decision in Cota Vargas, which was later reversed by the Attorney General that says that because there's nothing in the language for a sentence or the stated purpose. So what exactly Congress meant with the use of the language for which a sentence of one year or longer may be imposed, that this court cannot, in essence, assume the role of Congress and provide for that same conclusion and finality to the initial sentence. Both of those opinions were overruled based on the theory that Judge Gould is now stating. The Attorney General said, no, that doesn't work. We can't let the state change the results of immigration law. So that seems a pretty weak thing to rely on. Your Honor, let me respond to that by saying that the Attorney General, in essence, assumed the dissenting opinion provided by Judge Pauly in that decision. But that particular decision by the Attorney General is not dispositive in this case because that decision deals with the actual sentence and the reason that is provided by the defendant or the court in reducing the actual sentence from 365 to something less than 365 to avoid an aggravated felony finding, for example. This case deals with the possible maximum sentence and not the maximum or not the actual sentence imposed in this particular case. So although the decision is relevant because, yes, it does disregard the legal reasoning provided by the board in at least two precedential setting cases. That decision by the Attorney General is dealing with the actual sentence where the state court does not provide a legal defect to justify that reduction to the degree that it is going to have an immigration impact in proceedings before the Immigration Service or the Immigration Court. I think you're right about the distinction in Thomas. I think it's the Attorney General's opinion. But the principle, which is what Judge Gold was articulating, seems applicable here. Why is it not? Your Honor, it is not because Congress has not done the necessary work to provide for the same conclusion in cases involving the finality of sentence and the finality of conviction. In IRA, Congress took that additional step to define the conviction after the board has struggled for more than 50 years to come up with a definition that would apply nationally. Congress has not acted in this case in the same way it did with the definition of a conviction. And absent that action on the part of Congress, this court should not allow the board to simply implement its own policy reasons for concluding that rule in the Diaz case and the McNeil case based specifically on the language and the historical perspective of that statute. That conclusion, that language, should not be applied in this case unless the court engages in that same construction of statutory language and that same consideration of legislative history. Because the language and the history in this case do not support the board's decision. We respectfully request that the court reverse and remand these proceedings. Thank you, Your Honor. Thank you, Mr. Cruz. I appreciate the argument. And now we'll hear from Mr. Lutz representing the government. And this case is not about whether those changes would have a prospective impact on how certain immigration statutes apply to particular aliens convicted under those statutes. What this case is about is Mr. Velazquez-Rios' argument that California Penal Code 18.5 applies retroactively for federal immigration purposes. Because if the statute applies that way, it's no longer about California making permissible legislative choices about what conduct to criminalize and how to punish it. It becomes a question of California redefining how federal statutes that embody federal policy choices apply retroactively to settled, indisputable historical facts. And the board was correct to conclude in the published presidential decision under review today that California Penal Code Section 18.5 should not be applied retroactively just for immigration purposes. And the reason that's the correct holding is because, as Your Honor's questions during Petitioner's presentation already alluded to, that holding comports with the Supreme Court's decision in McNeil, this court's opinion in Diaz, the text and intent of the INA, and also several opinions of this court holding that the specific statutes at issue here are applied retrospectively with reference to the maximum sentence available at the time of the conviction. The statutory framework at issue here is very similar to the statutory framework at issue in McNeil and in Diaz. In McNeil, the Supreme Court was looking at two interlocking provisions of the Armed Career Criminal Act, one that said when a conviction became relevant and another that defined what type of conviction was relevant. The first one said when is a conviction relevant? When the defendant has three previous convictions. And the second statute said what kind of convictions are relevant, ones for which a maximum term of imprisonment of 10 years or more is prescribed by law. And the Supreme Court said it doesn't matter that the second of those two statutes uses the present tense, that's irrelevant. We're inherently looking at past convictions to determine their impact on a present question. And the only way to determine... But didn't the Supreme Court expressly state it wasn't considering whether a state, if a state applies such a rule retroactively? That's true, Your Honor, but this court was in Diaz and it answered that precise question. Once again in Diaz, we had two statutes that were interlocking, one that determined when a conviction was relevant and one that defined what type of conviction was relevant. When is a conviction relevant? Under the Controlled Substance Act provision at issue there. When two or more prior convictions have become final, what kind of convictions are relevant? Ones for offenses which were punishable by imprisonment for more than one year. And this court said in Diaz, again, that framework is inherently backward looking. It's inherently looking at prior convictions. That's why we use the law in effect at the time of conviction to determine what kind of sentence could have been handed down as a matter of historical fact. And this court said, and I quote, Even if California decided to give Proposition 47 retroactive effect for purposes of its own state law, that would not retroactively make the defendant's felony conviction a misdemeanor for purposes of federal law, because the federal laws at issue explicitly told us when they apply. When a defendant commits a federal drug offense after being convicted of two or more felony drug offenses that have become final. And those historical facts just were not in dispute. They couldn't have been disputed. Similarly here, we have an interlocking series of statutes. When is a conviction relevant here? When an application for cancellation of removal, such as Mr. Velazquez-Rios, applies for cancellation of removal. It must be that he has not been convicted of an offense under 122782. The INA provides a specific definition of conviction. It's a formal judgment of guilt or plea of guilty plus imposition of a punishment, penalty, or restraint. Historical facts that can't be changed by prior legislation. And like in McNeill and in Diaz, those provisions point to a separate statute that defines what kind of offenses we're looking at for purposes of this case. 122782 points to a crime involving moral turpitude for which a sentence of one year or longer may be imposed. Just like in McNeill, just like in Diaz, the whole question here is what are the contours of a prior conviction? What actually happened in the past? And subsequent legislation just can't change those. Section 18.5 is a statute, not a time machine. They can't change what actually happened in 2003 at the time of Mr. Velazquez's conviction. And what sentence he actually could have gotten at that time. And the next point I'd make is that even if we just look at Section 122782 in a vacuum, and I think the only reason we would do that is to entertain, if only to dismiss it, Mr. Velazquez-Rios' argument that that statute uses the present tense, we would note two dispositive points. First, just like in McNeill, the use of the present tense in the definitional statute doesn't matter because we're inherently looking at a prior conviction. And number two, even for that particular statute, this court has repeatedly, in published decisions, interpreted it, applied it as looking at what the maximum sentence could have been at the time of conviction. In Cerrone, this court was looking at a similar statute, a California Wilder statute. And it said in that statute the sentencing range, like here, was a year or more for either the felony or the misdemeanor aversions. And this court said in either event, four years or one year, meaning a felony or a misdemeanor, the state court could have imposed a sentence of one year or longer. In Mencia de la Fuente, another published opinion, this court was looking at a conspiracy statute under Nevada law. And it said that that statute is gross misdemeanor punishable by one year of imprisonment and is covered by 122782. Although Mencia was not sentenced to a year imprisonment, we defer to the board's reasonable approach of considering the sentence that could be imposed, not the actual sentence. And in Cenotes Cruz, another published opinion of this court, the court was looking at IRERA, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, which had implemented current 122782. And the court said that that implementation made the petitioner removable under 122782 for having been convicted of a crime involving moral turpitude for which a sentence of one year or longer could have been imposed. This court has looked at this precise statute this way. It's part of an interlocking scheme of statutes that the only purpose of which is to look at past convictions. And furthermore, I would submit that really there is only such a thing as a past conviction. There's no future convictions. I'm not sure what a present conviction would be. All convictions that would be relevant here are necessarily in the past, and past facts cannot be changed by subsequent legislation. Before I depart from this point about Diaz and McNeill, I think I ought to address the petitioner's argument about García López and La Farga. Although, Judges Acuda and Gould, I think you've already addressed that point pretty well yourselves in your questions. Those cases are just inapposite because here what we have is a state statute that, if it applies as the petitioner argues, changes how federal law embodying federal policy choices applies to settled past events. But in García López and La Farga, we had changes to the past events themselves. The events changed. There were new facts. In García López, the defendant returned to the state trial court after a probation violation, was sentenced at that time, and the offense having never previously been categorized as a felony or misdemeanor, the trial judge said, I'm going to call it now. It's a misdemeanor. Immigration statutes did give effect to that later change by that trial judge in that case. That's how Section 17B operates. The trial judge can declare a Waldberg conviction to be a misdemeanor. But that's not what we have here. We don't have changes in an actual conviction. We don't have an actual court order. We don't have new facts that flesh out the contours of the actual conviction and sentence that immigration law needs to credit. All we have is a statute that California was free to implement for its own purposes, and that may apply prospectively. But if we apply it retrospectively, the board was correct to note that that's just a question of changing how federal law applies to historical facts. And this court has said, the Supreme Court has said, we don't do that. The reasoning there absolutely controls. And to Judge Gould's point about the role of this statute in a federalist system, I think that's a very opposite point here, and that augurs strongly against Mr. Velazquez-Rios' proposed application of this statute. This court has repeatedly noted the importance of national uniformity in the application of federal law, and in particular with respect to immigration law, and has noted furthermore, not just with immigration law, but particularly regarding the INA's treatment of past convictions. As Mr. Velazquez-Rios' counsel himself identified just a moment ago, the reason we have an INA definition of conviction is because Congress was particularly interested in and particularly focused on standardizing, to the extent possible, the INA's nationwide treatment of prior state convictions. But if we apply the statute in the way Mr. Velazquez-Rios advocates, in the way the board correctly concluded we should not, it turns the whole framework on its head. It creates enormously absurd and disparate results, even as between defendants who were convicted in the same state trial court on the same day of the same offense and sentenced similarly. Under the law as it exists now, and as the board interpreted it, those two defendants, whenever they were placed in removal proceedings, would have the immigration consequences of their prior convictions assessed based on the law in effect at the time. But under Mr. Velazquez-Rios' approach, the approach the board rejected, the immigration consequences for those two defendants could be wildly disparate depending on when they got put in removal proceedings and if there had been an intervening legislative change, like California Penal Code Section 18.5. That produces constitutional problems. How is a defense counsel supposed to advise their client on the possible immigration consequences of a guilty plea? As the Supreme Court in Padilla and this court have held, a defense counsel is constitutionally obligated to do. Certainly that can be difficult given complexities of immigration law, but it would be unknowable if the immigration consequences of a conviction were left up to possible future events of unknown effect, unknown magnitude. For that reason alone, the court should reject the view Mr. Velazquez-Rios proposes. Furthermore, I'd point out that determining the immigration consequences of a past conviction based on the law in effect at the time of conviction, that's the one courts in the board apply today. It makes sense. Mr. Velazquez-Rios argues just that we should assess the immigration consequences of a prior conviction based on present law. But what does that mean? Does that mean when a charging document in immigration court in NTA is served on the alien, or when it's filed in immigration court, or when the alien applies for a form of relief that makes a prior conviction suddenly irrelevant, or when the IJ issues his or her decision, or when the board issues a decision, or when it's on petition for review in front of this honorable court? There's no question. In fact, Mr. Velazquez-Rios himself has purported, I think at three different times, to redefine what the immigration consequences of his conviction are. I mean, his argument stays the same, but he's made that argument about the present at three different time points. That's effectively three different times we would have to assess that prior conviction's consequences. The very uncertainty there makes that rule unworkable and invites endless, repetitive litigation. Every time the prior effect of a prior conviction, the immigration consequence of a prior conviction is going to be assessed, aliens removal proceedings are going to attempt to re-litigate. We're going to get multiple, it's going to be a floodgates issue. We're going to have repeated litigation at the agency level and in petitions for review in this court, and there's not going to be a rule to really clarify how it works. And I'd also propose an additional hypothetical. Suppose, unlike the somewhat sympathetic facts in this case, suppose that a state were to raise the retroactive penalty range for a specific conviction. Now, all of a sudden, aliens convicted under that offense could potentially face new immigration consequences that they would never have known about at the time of conviction, at the time they pled guilty. I was wondering about that. I was wondering about that. Would there be an ex post facto law issue associated with that? If the repercussions from a conviction became more severe? Your Honor, I hadn't thought about that, but that's a really good point. Yes, that's another reason to reject Mr. Velasquez-Rios' proposed interpretation. If the court overrules the board's decision today and says, no, state legislation is not effective just for its own purposes, but is also effective to change how federal law applies to settled prior facts, the next case that this court faces on that issue may involve exactly that concern, and then you'd have to grapple with this ex post facto question. Whereas the sensible approach that the board adopted, that leaves California free to criminalize whatever it likes and sentence those crimes however it likes, but just limits the application retroactively for federal purposes, avoids that problem entirely. I'd also return to the federalism point to note that all of these questions that we've been asking, all of these concerns are only going to apply in one of 50 states if Mr. Velasquez-Rios' interpretations were adopted. Everywhere else, conviction would mean the same thing under the INA. The prior convictions would be assessed for immigration purposes based on the law in effect at that time under the INA. But in California, we would have one different rule, and again, while they're free to legislate crimes and sentences however they like, that kind of fracturing of the INA's approach subverts numerous policy goals behind the INA, subverts the language of the INA itself, and the board was correct to hold the statute should be free to apply in California, but just would not be applied for federal purposes in that way. Your Honors, my time is low unless there are any other questions from the panel. Any questions? Hearing no questions, we'll thank you, Mr. Lutz, for your argument. Thank you, Your Honors. Mr. Cruz, do you have some rebuttal? Yes, Your Honor. Thank you. By the way, the time, the argument's extended far and wide in opposition, so I'm going to add another two minutes to the rebuttal time. Okay, then go ahead, Mr. Cruz. Thank you, Your Honor. Your Honor, the results that government counsel has just noted for the court were the same results and the same issues that perplexed the board for many, many years involving cases that deal with the definition of a conviction or the absence of a uniform definition for conviction. The matter of Oscok says that for more than 50 years, the board dealt and grappled with that issue, and it wasn't until Congress stepped in to provide for that clarity that the board was able to apply that definition uniformly. In other words, that it wasn't until then that we had the particular context and the necessary language in order for the board to avoid these different results that government counsel clearly alludes to. We recognize those potential results, and we do not dismiss those or deny those, but the board for 50 years refused to simply disregard the language of the statute, disregard the historical perspective of the statute, and refused to do exactly what the government has asked this court to do, to disregard the statute, to disregard the language of the statute, and that is completely unacceptable under this court's precedent, including the Supreme Court's prior decisions. The Supreme Court has clearly stated repeatedly, and Lafarga says this, that the courts will construe a statute in the narrowest possible way given the dire consequences of deportation for individuals in immigration court proceedings, that we need to look to the narrowest possible interpretation of the statute in assessing what is the proper interpretation and application of that code section. Counsel addresses the court about when this trigger in effect will take place. When will the court have to decide what is the possible sentence that could be imposed? Congress has done that in other parts of the act. With regards to good moral character, we look backwards 10 years. By statute, it provides for these different triggers that call for when that is to take place. Here, Congress has failed to do that. In the court, the board should not be permitted to simply implement its own policy reasons, its own desire for uniformity to address this particular void in the INA. There is a clear void in the INA that is an undeniable fact in this case. So the two questions, the question really for the court is, do we apply our own policy reasons the way the Attorney General did in the Thomas and Thompson decisions, or do we follow Supreme Court precedent and look at the language of the statute and the context and historical perspective of that statute? The government should not be permitted to take quotes from other cases that simply say federal law should determine federal law. State law should not determine the outcome of federal proceedings. Of course we all agree with that. Federal law should determine federal law. Federal law should determine how an enhancement provision applies to a particular defendant, not a subsequent state modification of a conviction, but again, a conviction, not a sentence. Council also raises the possibility that individuals will file motions to reopen based on change in the law. Your Honor, that's been going on from the beginning of the Immigration and Nationality Act. We filed motions to reopen based on significant changes in the law, but that has never discouraged this court from applying the legal principles that it must apply to come to a conclusion in this case about whether or not should be respected and applied by the BIA in these kind of cases. And yes, this court, Your Honor, Judge Gore, if I may quote a statement from your decision, you stated that absent language that provides for that specific result, absent that congressional history, that this court gives, quote, great weight to the significance of a state court's action in determining that the offense is a misdemeanor or a felony. Absent the language, Your Honor, absent the provision that calls for that most strict reading of the statute, this court should refer to the state and ask Congress to intervene if it so chooses. And for those reasons, we ask this court to reverse the board's decision. Thank you, Your Honors. Thank you, Mr. Cruz. So I'm going to thank Mr. Cruz and Mr. Lutz for your spirited and very skillful and helpful arguments to us. Without further ado, the Las Rios case shall now be submitted. Thank you, Your Honor.
judges: Gould, Ikuta, Ezra